# EXHIBIT A



**AREA WIDE PROTECTIVE**

## CONFIDENTIALITY, NON-COMPETITION & NON-SOLICITATION AGREEMENT

This Confidentiality, Non-Competition & Non-Solicitation ("Agreement") is entered into as of October ___, 2015 between AWP, Inc., an Ohio corporation ("AWP"), and Clarice M. Brooks ("Employee").

As a condition and in consideration of my employment with AWP, I make and agree to the following covenants and restrictions:

1.     **Restrictive Covenants.**

(a)     Acknowledgments. Employee acknowledges that: (i) as a result of Employee's employment by AWP, Employee has obtained and will obtain Confidential Information (as defined below); (ii) the Confidential Information has been developed and created by AWP at substantial expense and the Confidential Information constitutes valuable proprietary assets; (iii) AWP will suffer substantial damage and irreparable harm which will be difficult to compute if, while employed by AWP or thereafter, the Employee should enter a Competitive Business (as defined below) in violation of the provisions of this Agreement; (iv) the nature of AWP's business is such that it could be conducted anywhere in the world and that it is not limited to a geographic scope or region; (v) AWP will suffer substantial damage which will be difficult to compute if, while employed by AWP or thereafter, Employee should solicit or interfere with AWP's employees, clients or customers or should divulge Confidential Information relating to the business of AWP; (vi) the provisions of this Agreement are reasonable and necessary for the protection of the business of AWP; (vii) AWP would not have employed Employee unless Employee agreed to be bound by the terms hereof; and (viii) the provisions of this Agreement will not preclude Employee from other gainful employment, but instead will preclude only an unfair competitive advantage. "Competitive Business" as used in this Agreement shall mean any business which competes, directly or indirectly, with any aspect of AWP's business of providing traffic control services and equipment. "Confidential Information" as used in this Agreement includes, without limitation, any and all confidential and/or proprietary knowledge, data, or information of AWP, including, without limitation: (A) AWP's unique pricing, selling, and servicing methods and business techniques, training, service and business manuals, promotional materials, training courses and other training and instructional materials, vendor and product information, customer and prospective customer lists and pricing information, supplier pricing arrangements and pricing of specific materials, other customer and prospective customer information and other business information; (B) any trade secrets, drawings, inventions, methodologies, ideas, processes, formulas, source and object codes, data, programs, software source documents, works of authorship, know-how, improvements, discoveries, developments, designs and techniques, and all other work product of AWP, whether or not patentable or registrable under trademark, copyright, patent or similar laws; (C) information regarding plans

 Employee's Initials

Page 1 of 4

for research, development, new service offerings and/or products, equipment purchases, marketing, advertising and selling, distribution, business plans, business forecasts, budgets and unpublished financial statements, licenses, prices and costs, suppliers, customers or distribution arrangements; (D) information regarding the skills and compensation of employees, suppliers, agents, and/or independent contractors of AWP; (E) concepts and ideas relating to the development and distribution of content in any medium or to the current, future and proposed products or services of AWP; or (F) any other information, data or the like that is labeled confidential or orally disclosed to Employee as confidential.

      (b)    <u>Confidentiality</u>. Employee agrees not to, at any time, divulge, use, publish or in any other manner reveal, directly or indirectly, to any person, firm, corporation or any other form of business organization or arrangement and keep in the strictest confidence any Confidential Information, except (i) as may be necessary to the performance of Employee's duties for AWP, (ii) with AWP's express written consent, (iii) to the extent that any such information is in or becomes in the public domain other than as a result of Employee's breach of any of the obligations hereunder, or (iv) where required to be disclosed by court order, subpoena or other government process and in such event, Employee shall cooperate with AWP in attempting to keep such information confidential. Upon the request of AWP, Employee agrees to promptly deliver to AWP the originals and all copies, in whatever medium, of all such Confidential Information in Employee's possession or control.

      (c)    <u>Non-Compete</u>. Employee covenants and agrees that during Employee's employment and for a period of 2 years following the conclusion of Employee's employment for whatever reason, or following the date of cessation of the last violation of this Agreement, or from the date of entry by a court of competent jurisdiction of a final, unappealable judgment enforcing this covenant, whichever of the foregoing is the last to occur, Employee will not, as principal, or in conjunction with any other person, firm, partnership, corporation or other form of business organization or arrangement (whether as a shareholder, partner, member, principal, agent, lender, director, officer, manager, trustee, representative, employee or consultant), directly or indirectly, be employed by, provide services to, in any way be connected, associated or have any interest of any kind in, or give advice or consultation to any Competitive Business within the State of Georgia and within a 180-mile driving distance from any AWP office.

      (d)    <u>Non-Solicitation of Employees</u>. Employee covenants and agrees that, for a period of 5 years following the conclusion of Employee's employment for whatever reason, or following the date of cessation of the last violation of this Agreement, or from the date of entry by a court of competent jurisdiction of a final, unappealable judgment enforcing this covenant, whichever of the foregoing is the last to occur, Employee shall not, without the prior written permission of AWP, directly or indirectly (i) solicit, employ or retain, or have or deliberately cause any other person or entity to solicit, employ or retain, any person who is employed or is providing services to AWP at the time of Employee's termination of employment or was or is providing such services within the twelve (12) month period before or after Employee's termination of employment or (ii) request, suggest or deliberately cause any employee of AWP to breach or threaten to breach terms of said employee's agreements with AWP or to terminate his or her employment with AWP.

      (e)    <u>Non-Solicitation of Clients and Customers</u>. Employee covenants and agrees that, for a period of 5 years following the conclusion of Employee's employment for whatever reason,

Page 2 of 4

_CMB_ Employee's Initials

or following the date of cessation of the last violation of this Agreement, or from the date of entry by a court of competent jurisdiction of a final, unappealable judgment enforcing this covenant, whichever of the foregoing is the last to occur, as principal, or in conjunction with any other person, firm, partnership, corporation or other form of business organization or arrangement (whether as a shareholder, partner, member, lender, principal, agent, director, officer, manager, trustee, representative, employee or consultant), directly or indirectly: (i) solicit or accept any business, in competition with AWP, from any person or entity who was an existing or prospective customer or client of AWP at the time of, or at the time during the twelve (12) months preceding, Employee's termination of employment; or (ii) request, suggest or deliberately cause any of AWP's clients or customers to cancel, reduce, change the terms of or terminate any business relationship with AWP involving services or activities which were directly or indirectly the responsibility of Employee during Employee's employment.

      (f)     <u>Post-Employment Property</u>. The parties agree that any work of authorship, invention, design, discovery, development, technique, improvement, source code, hardware, device, data, apparatus, practice, process, method or other work product whatever (whether patentable or subject to copyright, or not, and hereinafter collectively called "discovery") related to training or marketing methods and techniques that Employee, either solely or in collaboration with others, has made or may make, discover, invent, develop, perfect or reduce to practice during the term of Employee's employment, or within three (3) months thereafter, whether or not during regular business hours, and created, conceived or prepared on AWP's premises or otherwise and related to AWP's business, shall be the sole and complete property of AWP. More particularly, and without limiting the foregoing, Employee agrees that all of the foregoing and any (i) inventions (whether patentable or not, and without regard to whether any patent therefor is ever sought); (ii) marks, names or logos (whether or not registrable as trade or service marks, and without regard to whether registration therefor is ever sought); (iii) works of authorship (without regard to whether any claim of copyright therein is ever registered); and (iv) trade secrets, ideas, and concepts ((i)- (iv) collectively, "Intellectual Property Products") created, conceived or prepared on AWP's premises or otherwise, whether or not during normal business hours, and related in any way to AWP's business, shall perpetually and throughout the world be the exclusive property of AWP, as the case may be, as shall all tangible media (including, but not limited to, papers, computer media of all types and models) in which such Intellectual Property Products shall be recorded or otherwise fixed. Employee agrees that all works of authorship created by Employee during Employee's engagement by AWP shall be works made for hire of which AWP is the author and owner of copyright. To the extent that any competent decision-making authority should ever determine that any work of authorship created by Employee during Employee engagement by AWP is not a work made for hire, Employee hereby assigns all right, title and interest in the copyright therein, in perpetuity and throughout the world, to AWP. To the extent that this Agreement does not otherwise serve to grant or otherwise vest in AWP all rights in any Intellectual Property Product created by Employee during Employee's engagement by AWP, or within three (3) months thereafter, Employee hereby assigns all right, title and interest therein, in perpetuity and throughout the world, to AWP. Employee agrees to execute, immediately upon AWP's reasonable request and without charge, any further assignments, applications, conveyances or other instruments, at any time after execution of this Agreement, whether or not Employee is engaged by AWP at the time such request is made, in order to permit AWP, and/or its respective assigns to protect, perfect, register, record, maintain or enhance their rights in any Intellectual Property Product; provided, that, AWP shall bear the cost of any such assignments, applications or consequences. Upon termination of Employee's employment with

Page 3 of 4


Employee's Initials

AWP for any reason whatsoever, and at any earlier that AWP so requests, Employee will immediately deliver to the custody of the person designated by AWP all originals and copies of any documents and other property of AWP in Employee's possession or under Employee's control.

(g)　Enforcement. If Employee commits a breach of any of the provisions of this Agreement, AWP shall have the right and remedy to seek to have the provisions specifically enforced by any court having jurisdiction (without the posting of any bond or security), it being acknowledged and agreed by Employee that the services being rendered hereunder to AWP are of a special, unique and extraordinary character and that any such breach will cause irreparable injury to AWP and that money damages will not provide an adequate remedy to AWP. Such right and remedy shall be in addition to, and not in lieu of, any other rights and remedies available to AWP at law or in equity.

(h)　Blue Pencil. If, at any time, the provisions of this Agreement shall be determined to be invalid or unenforceable under any applicable law, by reason of being vague or unreasonable as to area, duration or scope of activity, this Agreement shall be considered divisible and shall become and be immediately amended to only such area, duration and scope of activity as shall be determined to be reasonable and enforceable by the court or other body having jurisdiction over the matter and Employee and AWP agree that this Agreement as so amended shall be valid and binding as though any invalid or unenforceable provision had not been included herein.

2.　**Miscellaneous.**

(a)　Headings. The headings of the Sections and sub-sections contained in this Agreement are for convenience only and shall not be deemed to control or affect the meaning or construction of any provision of this Agreement.

(b)　Governing Law. This Agreement shall be governed, construed, performed and enforced in accordance with its express terms and otherwise in accordance with the laws of the State of Georgia, without reference to principles of conflict of laws.

EMPLOYEE ACKNOWLEDGES THAT EMPLOYEE HAS READ THIS AGREEMENT AND HAS HAD THE OPPORTUNITY TO REVIEW ITS PROVISIONS WITH ANY ADVISORS AS EMPLOYEE CONSIDERED NECESSARY AND THAT EMPLOYEE UNDERSTANDS THIS AGREEMENT'S CONTENTS AND SIGNIFIES SUCH UNDERSTANDING AND AGREEMENT BY SIGNING BELOW.

Name: _CLARICE M. BROOKS_　　Date: _Oct. 28, 2015_

Address: _▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮_

City: _▮▮▮▮▮▮▮▮▮_　State: _GA._　Zip Code: _▮▮▮▮▮▮_

Signature: _CMBrooks_

_CMB_ Employee's Initials

Page 4 of 4