IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CLARICE BROOKS | |
| Plaintiff, | Civil Action No. 1:19-cv-00073-TCB |
| v. | |
| AWP, INC. | JURY TRIAL DEMANDED |
| Defendant. | |

## FIRST AMENDED COMPLAINT

Pursuant to the Court's January 8, 2019 Order (Dkt. 3), Plaintiff Clarice Brooks ("Plaintiff") files this First Amended Complaint against Defendant AWP, Inc. ("Defendant"). Plaintiff is a former employee of Defendant. Plaintiff (1) alleges that Defendant violated the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") by misclassifying her as an exempt employee and failing to pay her overtime wages; (2) seeks a declaratory judgment regarding a "Confidentiality, Non-Competition & Non-Solicitation Agreement" that Plaintiff executed in connection with her employment, and specifically requests a declaratory judgment that certain restrictive covenants Defendant seeks to enforce against Plaintiff are invalid and unenforceable as a matter of law; and (3) requests preliminary and permanent

1

injunctive relief prohibiting Defendant from attempting to enforce restrictive covenants that violate Georgia law.  Plaintiff shows the Court as follows:

## NATURE OF THE ACTION

1.     Plaintiff asserts violations of the FLSA and specifically claims that Defendant misclassified her as an exempt employee under the FLSA and failed to pay her overtime wages when she regularly worked in excess of forty (40) hours per week.  Regarding her FLSA claims, Plaintiff alleges that she is entitled to (i) unpaid overtime wages; (ii) liquidated damages; (iii) interest; and (iv) attorneys' fees and costs.

2.     Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202 on the grounds that Defendant (1) intends to attempt to enforce unreasonable restrictive covenants against Plaintiff which violate Georgia law; and (2) seeks to enforce a non-solicitation agreement that, by its terms, does not prohibit Plaintiff from doing anything and, in the alternative, violates Georgia law.  Plaintiff requests a declaratory judgment that such restrictive covenants are invalid and unenforceable. Plaintiff also seeks expenses of litigation pursuant to O.C.G.A. § 13-6-11 due to Defendant's bad faith in attempting to impose restrictive covenants upon Plaintiff that are invalid and violate Georgia law.

3.     Finally, Plaintiff requests preliminary and permanent injunctive relief against Defendant and respectfully requests that the Court enjoin Defendant from (1) seeking to enforce the invalid restrictive covenant provisions in the "Confidentiality, Non-Competition & Non-Solicitation Agreement", and/or (2) seeking any damages based on any alleged breach of such provisions.

## JURISDICTION AND VENUE

4.     This Court has federal question jurisdiction over Plaintiff's FLSA claims, pursuant to 28 U.S.C. § 1331.

5.     Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over Plaintiff's claims related to the "Confidentiality, Non-Competition & Non-Solicitation Agreement" (Counts Two-Four) because such claims relate to Plaintiff's employment with Defendant and are so related to Plaintiff's FLSA claims that they form part of the same case or controversy.

6.     In addition, the Court has independent diversity jurisdiction, pursuant to 28 U.S.C. § 1332, over Plaintiff's claims related to the "Confidentiality, Non-Competition & Non-Solicitation Agreement" (Counts Two-Four) because the parties are citizens of different states and Plaintiff is likely to incur damages in excess of $75,000 without the relief she requests.

7.     There is an actual and definite controversy between Plaintiff and Defendant as to the enforceability of the "Confidentiality, Non-Competition & Non-Solicitation Agreement," the parties' rights under the Agreement, and Plaintiff's ability to work, and earn a living, in her chosen industry.

8.     Pursuant to 28 U.S.C. § 1391 and Local Rule 3.1(B)(3), venue is proper in this Court because the unlawful employment practices described herein were committed within the Atlanta Division of the Northern District of Georgia.

## PARTIES

9.     Plaintiff is a citizen of the United States of America and a resident of the State of Georgia; she submits herself to the jurisdiction of this Court.

10.     Defendant employed Plaintiff from approximately October 2015 to November 9, 2018 in Henry County, Georgia.

11.     Defendant is a for-profit Ohio corporation with its principal place of business at 4244 Mt. Pleasant Street NW, North Canton, Ohio 44270.  Defendant regularly does business in the Northern District of Georgia.

12.     Defendant may be served with process through its registered agent, CT Corporation System, 289 S. Culver Street, Lawrenceville, Georgia 30046-4805.

13.     Defendant is governed by and subject to 29 U.S.C. §§ 206, 207.

4

14.     At all relevant times, Defendant has been, and continues to be, an "employer" engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 201, *et seq*.

15.     At all relevant times, Defendant has employed and continues to employ employees, including Plaintiff, who engage or engaged in interstate commerce or in the production of goods for commerce.

16.     At all relevant times, Defendant had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

17.     At all relevant times, Defendant has had an annual gross volume of sales made or business done in excess of $500,000.

18.     At all relevant times, Defendant was an "employer" of Plaintiff as that term is defined by 29 U.S.C. § 203(d).

## STATEMENT OF FACTS

19.     Plaintiff is retired from the Fulton County Police Department, where she worked from August 15, 1988 to February 11, 2014, rising from the rank of Police Officer 1 to the rank of Captain.

20.     Defendant employed Plaintiff from approximately October 2015 to November 9, 2018.  Throughout Plaintiff's employment, her title was Police Coordinator.

21.     Defendant offers a variety of services to third-party clients, which include "traffic control and flagging services," such as (1) providing individuals to redirect traffic around a worksite on a highway or road, (2) event services, in which Defendant will help manage traffic for various events, including sporting events, festivals, and parades.

22.     Defendant advertises that it can "provide police services" for such purposes as "traffic control," "directing traffic," and "controlling traffic at signalized intersections."

23.     Defendant also rents and sells traffic control equipment.

24.     According to Defendant's website, it has "more than 60 offices across 20 states."

25.     As a Police Coordinator, Plaintiff's primary job duty was to receive – but not solicit – requests from clients, either by email, phone or text, and then contact local police agencies to find the requested number of officers to staff each job.  In essence, this meant that Plaintiff would receive requests to staff worksites and then would communicate the available opportunities to various police agencies within the

6

local area.  For each job, Plaintiff continued to make calls and otherwise contact police agencies in Georgia until the client's staffing requirements were satisfied. Plaintiff also received calls, texts and emails from employees of Defendant and Defendant's support center to request that she find staffing for worksites.

26.    Plaintiff spent the overwhelming majority of her work time receiving calls, text messages and emails, recording project needs as dictated by the clients, and then using a list of contacts to relay information to officers about available shifts.

27.    Plaintiff reported to Johnny Cone, who held the title of General Manager.

28.    Plaintiff generally worked out of her home.

29.    For purposes of her employment with Defendant, Plaintiff's home office was a fixed site and was a place of business for Defendant.

30.    Plaintiff performed work for Defendant in Georgia, and the worksites for which she coordinated staffing were almost exclusively in Georgia.

31.    Plaintiff was not customarily and regularly engaged away from Defendant's place of business.

32.    Plaintiff's primary duty was not making sales or obtaining orders or contracts for services.  Plaintiff, instead, merely received information about staffing

requirements from Defendant's clients, which she would then communicate to police agencies.

33.    Plaintiff's primary duty was not to manage the Defendant's operations or to manage the operations of a customarily recognized department or subdivision of Defendant.

34.    No employees of Defendant reported to Plaintiff; Plaintiff did not direct the work of, or supervise, any employees of Defendant.

35.    During her employment with Defendant, Plaintiff was not empowered to, and did not, exercise discretion and independent judgment with respect to matters of significance.  Instead, Plaintiff merely relayed information, acting as a conduit between the client and police officers who may want to accept jobs.  Whenever important decisions needed to be made, Plaintiff would notify Mr. Cone or another supervisor, who would make the decisions.

36.    Notwithstanding Plaintiff's non-exempt job duties, Defendant classified Plaintiff as an exempt employee under the FLSA and paid her a set salary.

37.    Plaintiff's job as Police Coordinator required her to work long hours, including early mornings and late nights, and weekends, as well as to remain on-call virtually all of the time.

38.    Plaintiff worked, at a minimum, an average of 50 hours per week throughout her employment, and frequently worked more hours than that.

39.    Defendant did not pay Plaintiff overtime wages at a rate of 1 ½ her regular rate when she worked in excess of 40 hours per week.

40.    Merely by way of example, in the two weeks prior to Defendant notifying Plaintiff that she would be terminated, from October 21, 2018 to October 27, 2018, and October 28, 2018 to November 3, 2018, Plaintiff worked well in excess of 40 hours each week and Defendant did not pay her overtime compensation.

41.    Defendant was, or should have been, aware that the FLSA requires it to pay non-exempt employees overtime for all hours worked in excess of 40 per workweek.

42.    Defendant's failure to pay Plaintiff the overtime required by the FLSA was willful and was not in good faith.

43.    Defendant failed to maintain accurate records of the time worked by Plaintiff, in violation of the FLSA.

44.    As a result of the unlawful acts of Defendant, Plaintiff has been deprived of overtime wages for all hours worked in excess of 40 per week, and is entitled to recovery of such amounts, liquidated damages, interest, attorneys' fees and costs.

45.    Plaintiff claims that she was misclassified throughout her employment with Defendant, from approximately October 2015 until she was laid off in November 2018.  However, because of the FLSA's statute of limitations, Plaintiff is limited to seeking unpaid overtime and liquidated damages starting three years prior to the filing of the Complaint in this action until the termination of her employment in November 2018.

46.    As an initial estimate of her FLSA damages, and based on her conservative estimate of 50 work hours per week, Plaintiff estimates that she is owed $66,039.00 in <u>unliquidated</u> overtime wages, which amount increases to $132,078.00 with liquidated damages added.  This does not include her reasonable attorneys' fees and costs.  Plaintiff reserves the right to amend and/or supplement her estimate as the case and discovery progresses.

47.     Plaintiff calculates the initial estimate of unliquidated overtime wages as follows:

| Year | Salary | Regular Rate | OT Rate | OT Total |
|------|--------|--------------|---------|----------|
| 1[1] | $65,000 | $31.25 | $46.875 | $17,812.50 |
| 2 | $66,250[2] | $31.85 | $47.775 | $23,887.50 |
| 3 | $67,500 | $32.45 | $48.678 | $24,339.00 |
| **Total** | | | | **$66,039.00** |

48.     On or about October 28, 2015, Defendant mandated that Plaintiff, as a condition of working for Defendant, execute a "Confidentiality, Non-Competition & Non-Solicitation Agreement" (hereinafter, the "Agreement"). The Agreement is attached hereto as Exhibit A.

49.     The Agreement provides for a Georgia choice of law. *See* Exh. A at ¶ 2(b).

50.     Paragraph 1(a) of the Agreement defines "Competitive Business" as "any business which competes, directly or indirectly, with any aspect of AWP's business of providing traffic control services and equipment."

51.     Paragraph 1(c) of the Agreement provides:

<u>Non-Compete.</u>     Employee covenants and agrees that during Employee's employment and for a period of 2 years following the

---

[1] Only 38 weeks is used for the first year because Plaintiff started in October 2015 and the Complaint was filed on January 4, 2019.

[2] Plaintiff is unsure of her exact salary during this period but believes it is approximately this amount.

conclusion of Employee's employment for whatever reason, or following the date of cessation of the last violation of this Agreement, or from the date of entry by a court of competent jurisdiction of a final, unappealable judgment enforcing this covenant, whichever of the foregoing is the last to occur, Employee will not, as principal, or in conjunction with any other person, firm, partnership, corporation or other form of business organization or arrangement (whether as a shareholder, partner, member, principal, agent, lender, director, officer, manager, trustee, representative, employee or consultant), directly or indirectly, be employed by, provide services to, in any way be connected, associated or have any interest of any kind in, or give advice or consultation to any Competitive Business within the State of Georgia and within a 180-mile driving distance from any AWP office.

52.    Paragraph 1(d) of the Agreement provides:

<u>Non-Solicitation of Employees</u>.  Employee covenants and agrees that, for a period of 5 years following the conclusion of Employee's employment for whatever reason, or following the date of cessation of the last violation of this Agreement, or from the date of entry by a court of competent jurisdiction of a final, unappealable judgment enforcing this covenant, whichever of the foregoing is the last to occur, Employee shall not, without the prior written permission of AWP, directly or indirectly, (i) solicit, employ, retain, or have or deliberately cause any other person or entity to solicit, employ or retain, any person who is employed or is providing services to AWP at the time of Employee's termination of employment or was or is providing such services within the twelve (12) month period before or after Employee's termination of employment or (ii) request, suggest or deliberately cause any employee of AWP to breach or threaten to breach terms of said employee's agreements with AWP or to terminate his or her employment with AWP.

53.    Paragraph 1(e) of the Agreement provides:

<u>Non-Solicitation of Clients and Customers</u>.  Employee covenants and agrees that, for a period of 5 years following the conclusion of

Employee's employment for whatever reason, or following the date of cessation of the last violation of this Agreement, or from the date of entry by a court of competent jurisdiction of a final, unappealable judgment enforcing this covenant, whichever of the foregoing is the last to occur, as principal, or in conjunction with any other person, firm, partnership, corporation, or any other form of business organization or arrangement (whether as a shareholder, partner, member, lender, principal, agent, director, officer, manager, trustee, representative, employee or consultant), directly or indirectly: (i) solicit or accept any business, in competition with AWP, from any person or entity who was an existing or prospective customer or client of AWP at the time of, or at the time during the twelve (12) months preceding, Employee's termination of employment; or (ii) request, suggest or deliberately cause any of AWP's clients or customers to cancel, reduce, change the terms of or terminate any business relationship with AWP involving services or activities which were directly or indirectly the responsibility of Employee during Employee's employment.

[*sic*].

54.     The Agreement's non-solicitation clause, as written, does not prohibit Plaintiff from doing anything. It does not contain any statement that Plaintiff either "will not" or "shall not" do anything.

55.     Per the Agreement, the Heading "Non-Solicitation of Clients and Customers" is "for convenience only and shall not be deemed to control or affect the meaning or construction of any provision of this Agreement." *See* Exh. A at ¶ 2(a).

56.     In November 2018, Defendant notified Plaintiff that she was going to be laid off, and it was terminating her employment without cause.

57.     Following this notification, in November 2018, Defendant expressly indicated to Plaintiff that it intends to enforce the restrictive covenant provisions of the Agreement.

58.     Until Plaintiff's rights are clarified, Plaintiff will remain uncertain about the legal restrictions on her ability to work in her chosen industry.

59.     When Defendant terminated Plaintiff's employment, she was earning approximately $67,500 per year.  If Defendant is successful in shutting Plaintiff out of her chosen industry for two or more years, Plaintiff reasonably believes that she stands to lose well in excess of $75,000.

## COUNT ONE
## Willful Failure to Pay Overtime Wages in Violation of the FLSA

60.     Plaintiff reasserts and incorporates by reference all preceding paragraphs of the Complaint.

61.     At all relevant times, Defendant was, and continues to be, an employer within the meaning of the FLSA, 29 U.S.C. § 203(d).

62.     The overtime wage provisions set forth in the FLSA apply to Defendant and protect Plaintiff.

63.     The FLSA requires employers, such as Defendant, to compensate employees at an overtime rate of 1 ½ their regular rate for all hours worked in excess of 40 per week.

64.     Throughout Plaintiff's employment with Defendant, Defendant misclassified Plaintiff as exempt under the FLSA when, in reality, her job did not meet the requirements for any FLSA exemption.

65.     Plaintiff routinely worked for Defendant in excess of 40 hours per week.

66.     Plaintiff worked, at a minimum, an average of 50 hours per week throughout her employment, and frequently worked more hours than that.

67.     Defendant engaged in a routine practice of violating the FLSA by misclassifying Plaintiff as an exempt employee and failing to pay Plaintiff overtime wages for all hours worked in excess of 40 per week.

68.     Defendant failed to maintain accurate records of Plaintiff's time worked, in violation of the FLSA.

69.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

70.     Defendant did not make a good faith effort to comply with the FLSA with respect to its compensation of Plaintiff.

71.     Due to Defendant's FLSA violations, Plaintiff is entitled to recover from Defendant unpaid overtime wages for each workweek within the limitations period, and an additional and equal amount of liquidated damages for Defendant's

violations of the FLSA, interest, and reasonable attorneys' fees and costs of litigation.

## COUNT TWO
### Declaratory Judgment Proclaiming the Non-Compete and Non-Solicitation Covenants Invalid, Void and Unenforceable

72.    Plaintiff reasserts and incorporates by reference all preceding paragraphs of the Complaint.

73.    The "Non-Compete" provision of the Agreement (paragraph 1(c)) is overbroad, indefinite, unreasonable and otherwise void under Georgia law.

   a.  First, the tolling clause of the "Non-Compete" provision, purporting to extend the covenant two years "following the date of cessation of the last violation of this Agreement," renders the duration of the "Non-Compete" provision indefinite and unenforceable as a matter of law.

   b.  Second, the scope of prohibited activities in the "Non-Compete" provision is overly broad and unreasonable under O.C.G.A. § 13-8-53(a), providing that Plaintiff,

   …will not, as principal, or in conjunction with any other person, firm, partnership, corporation or other form of business organization or arrangement (whether as a shareholder, partner, member, principal, agent, lender, director, officer, manager, trustee, representative, employee or consultant), <u>directly or indirectly, be employed by, provide services to, in any way be connected, associated or have any interest of any kind in, or give advice or consultation to</u> any Competitive Business…

16

Agreement at ¶ 1(c) (emphasis added).   Coupled with the broad definition of "Competitive Business" as "any business which competes, directly or indirectly, with any aspect of AWP's business of providing traffic control services and equipment" (Exh. A, ¶ 1(a)), this provision is entirely unreasonable in scope, and would prohibit innumerable activities in Plaintiff's chosen field, effectively banning her entirely from any association whatsoever with the industry.

c.  Third, the geographic scope of the "Non-Compete" provision defined as "within the State of Georgia and within a 180-mile driving distance from any AWP office," is unreasonable and renders the covenant unenforceable.   While inartfully drafted, a conservative reading of this provision (by one whom does not wish to breach a contract) would interpret the covenant as banning Plaintiff from working in Georgia, and banning Plaintiff from working "within a 180-mile driving distance from any AWP office," of which–according to Defendant's website– there are "more than 60" in 20 states.   Compounding the overbreadth and uncertainty of this provision, the geographic scope is not limited to AWP's offices existent at the time of the contract, or even during Plaintiff's employment, and accordingly, the purported geographic

17

restrictions could expand depending on where AWP decides to put its next location(s).

d. Fourth, even without the impermissible tolling, the duration of the "Non-Compete" provision is unreasonable in the context of these parties. While a restrictive covenant of two years is now presumptively reasonable in Georgia, that presumption is rebuttable, and here it is unreasonable given the undue burden it would place on Plaintiff weighed against the protectable interests of Defendant.

74. The "Non-Solicitation of Employees" provision of the Agreement (paragraph 1(d)) is overbroad, indefinite, unreasonable and otherwise void under Georgia law.

a. First, the tolling clause of the "Non-Solicitation of Employees" provision, purporting to extend the covenant five years "following the date of cessation of the last violation of this Agreement," renders the duration of the "Non-Solicitation of Employees" provision indefinite and unenforceable as a matter of law.

b. Second, the "Non-Solicitation of Employees" provision's prohibition against "employ[ing] or retain[ing]" individuals event absent any actual solicitation by Plaintiff renders the provision unreasonable and invalid.

18

c. Third, the extension of the provision to future employees Defendant hires "within the twelve (12) month period" "…after Employee's termination of employment" renders the provision unreasonable and invalid.

d. Fourth, even without the impermissible tolling, the five-year duration of the "Non-Solicitation of Employees" provision is facially unreasonable and invalidates the entire provision.  Indeed, restrictive covenants which are "more than two years in duration, measured from the date of the termination of the business relationship" are presumptively unreasonable, pursuant to O.C.G.A. § 13-8-57(b).

75.    With respect to the "Non-Solicitation of Clients and Customers" provision of the Agreement (paragraph 1(e)), Plaintiff requests a declaratory judgment that, by the provision's clear language, it does not prohibit Plaintiff from doing anything.

76.    Per the Agreement, the Heading "Non-Solicitation of Clients and Customers" is "for convenience only and shall not be deemed to control or affect the meaning or construction of any provision of this Agreement."  *See* Exh. A at ¶ 2(a).

77.    In the alternative, to the extent the "Non-Solicitation of Clients and Customers" provision of the Agreement (paragraph 1(e)) prevents Plaintiff from

doing anything, which Plaintiff denies, it is overbroad, indefinite, unreasonable and otherwise void under Georgia law.

a. First, the tolling clause of the "Non-Solicitation of Clients and Customers" provision, purporting to extend the covenant five years "following the date of cessation of the last violation of this Agreement," renders the duration of the "Non-Solicitation of Clients and Customers" provision indefinite and unenforceable as a matter of law.

b. Second, to the extent that Defendant claims the "Non-Solicitation of Clients and Customers" prohibits the solicitation of clients and customers, which it does not, the provision would also purport to prohibit Plaintiff from accepting work, even absent any solicitation, making it unreasonable and unenforceable as a matter of law.

c. Third, the "Non-Solicitation of Clients and Customers" provision is not limited to clients and customers with whom Plaintiff had material contact, making it *per se* overbroad under Georgia law.

d.  Fourth, even without the impermissible tolling, the five-year duration of the "Non-Solicitation of Clients and Customers" provision is facially unreasonable and invalidates the entire provision.  Indeed, restrictive covenants which are "more than two years in duration, measured from

the date of the termination of the business relationship" are presumptively unreasonable, pursuant to O.C.G.A. § 13-8-57(b).

78. The "Non-Compete" and "Non-Solicitation of Employees" provisions are void and unenforceable and the Court should accordingly enter a declaratory judgment providing that these covenants violate Georgia law and may not be enforced.

79. The "Non-Solicitation of Clients and Customers" provision, by its terms, does not prohibit Plaintiff from doing anything. Plaintiff requests a declaratory judgment from the Court that the provision does not prohibit Plaintiff from soliciting Defendant's clients and customers. In the alternative, if "will not" or "shall not" were written in to the Agreement, which is impermissible under Georgia law, the provision would be void and unenforceable. Plaintiff requests that the Court enter a declaratory judgment that this provision does not bar Plaintiff from doing anything.

## COUNT THREE
## Expenses of Litigation Pursuant to O.C.G.A. § 13-6-11

80.     Plaintiff reasserts and incorporates by reference all preceding paragraphs of the Complaint.

81.     Defendant's attempt to enforce the unreasonable and invalid restrictive covenants in the Agreement upon Plaintiff was in bad faith and has caused Plaintiff unnecessary trouble and expense.

82.     Pursuant to O.C.G.A. § 13-6-11, Defendants are liable for Plaintiff's expenses of litigation, including reasonable attorneys' fees and costs.

## COUNT FOUR
## Injunction Prohibiting Defendant from Enforcing Void Covenants

83.     Plaintiff reasserts and incorporates by reference all preceding paragraphs of the Complaint.

84.     The "Non-Compete" and "Non-Solicitation of Employees" provisions in the Agreement are void and unenforceable and, accordingly, Plaintiff respectfully requests that the Court enjoin Defendant from (1) seeking to enforce the provisions in any state and/or federal court against Plaintiff, and/or (2) seeking any damages based on any alleged breach of the provisions.

85.     The "Non-Solicitation of Clients and Customers" provision in the Agreement does not prevent Plaintiff from doing anything and Plaintiff respectfully

requests that the Court enjoin Defendant from (1) attempting to invoke the provision in any venue, including in any state or federal court, to attempt to prevent Plaintiff from soliciting clients or customers, and/or (2) seeking any damages based on any alleged breach of the provision.

86.    In the alternative, the "Non-Solicitation of Clients and Customers" provision in the Agreement is void and unenforceable and, accordingly, Plaintiff respectfully requests that the Court enjoin Defendant from (1) seeking to enforce the provision in any state and/or federal court against Plaintiff, and/or (2) seeking any damages based on any alleged breach of the provision.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and the following relief:

a)    A declaratory judgment that the Defendant's practices complained of herein are unlawful under the FLSA;

b)    An award of unpaid overtime wages due under the FLSA;

c)    An award of liquidated damages as a result of Defendant's failure to pay overtime wages.

d)    An award of prejudgment and post-judgment interest on Plaintiff's FLSA claims;

e)      A declaratory judgment that the "Non-Compete" and "Non-Solicitation of Employees" provisions in the "Confidentiality, Non-Competition & Non-Solicitation Agreement" are void and unenforceable;

f)      A declaratory judgment that the "Non-Solicitation of Clients and Customers" provision in the "Confidentiality, Non-Competition & Non-Solicitation Agreement" does not prohibit Plaintiff from doing anything, or, in the alternative, is void and unenforceable;

g)      A preliminary injunction prohibiting Defendant from seeking to enforce the "Non-Compete," "Non-Solicitation of Employees" and "Non-Solicitation of Clients and Customers" provisions in the "Confidentiality, Non-Competition & Non-Solicitation Agreement" and from seeking any damages based on any alleged breach of those provisions;

h)      A permanent injunction prohibiting Defendant from seeking to enforce the "Non-Compete," "Non-Solicitation of Employees" and "Non-Solicitation of Clients and Customers" provisions in the "Confidentiality, Non-Competition & Non-Solicitation Agreement" and from seeking any damages based on any alleged breach of those provisions;

i)      An award of costs and expenses of this action, including reasonable attorneys' and expert fees; and

j)      Such other and further relief as the Court deems proper.

Dated this 29th day of January 2019.

> Respectfully submitted,
>
> */s/ Justin M. Scott*
> Justin M. Scott
> Georgia Bar No. 557463
> SCOTT EMPLOYMENT LAW, P.C.
> 246 Sycamore Street
> Suite 150
> Decatur, Georgia 30030
> Telephone: 678.780.4880
> Facsimile: 478.575.2590
> jscott@scottemploymentlaw.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| CLARICE BROOKS | |
|     Plaintiff, | Civil Action No. 1:19-cv-00073-TCB |
| v. | |
| AWP, INC. | JURY TRIAL DEMANDED |
|     Defendant. | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically filed the foregoing with the Clerk of Court using the CM/ECF filing system, which will send electronic notification of such filing to the following counsel of record as follows:

Edward N. Boehm, Jr.
FISHER & PHILLIPS, LLP
1075 Peachtree Street NE, Suite 3500
Atlanta, Georgia 30309
tboehm@fisherphillips.com

Respectfully submitted, this 29th day of January 2019.

*/s/ Justin M. Scott*
Justin M. Scott
Georgia Bar No. 557463
SCOTT EMPLOYMENT LAW, P.C.
246 Sycamore Street, Suite 150
Decatur, Georgia 30030
Telephone: 678.780.4880
Facsimile: 478.575.2590
jscott@scottemploymentlaw.com

Counsel for Plaintiff